**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY KETASSDA LEMICY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:26-cv-00901-MTS |
| | ) | |
| JEREMY S. CROWLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Anthony Lemicy is serving a sentence of 120 years' imprisonment after a jury found him guilty of four counts of sexual exploitation of a minor. *United States v. Lemicy*, 122 F.4th 298, 302 (8th Cir. 2024), *cert. denied*, 146 S. Ct. 347 (2025); *see* 18 U.S.C. § 2251(a), (e). Plaintiff is therefore a "prisoner" as that term is defined in 28 U.S.C. § 1915(h). Consequently, he is subject to the three-strikes rule that limits prisoners' eligibility to proceed *in forma pauperis* in federal court after they have had three qualifying dismissals of their actions. *See* 28 U.S.C. § 1915(g).

When Plaintiff Lemicy submitted his Complaint in this action to the Clerk of Court, Plaintiff had already accumulated two strikes. After he submitted his Complaint, but before he moved to proceed *in forma pauperis* in this action, Plaintiff received a third strike from the dismissal of another action. The timing of this third strike raises a question: Does this strike, acquired after Plaintiff submitted his Complaint in this action, count as a "prior occasion[]" under § 1915(g)? The Court holds that it does. Section

1915(g) therefore prohibits Plaintiff from proceeding in this action *in forma pauperis*—i.e., without prepaying the full filing fee.

**I.**

Congress has mandated that the clerk of each United States district court charge filing fees to all persons "instituting [a] civil action." 28 U.S.C. § 1914(a). Section 1915 creates a limited exception to this requirement. *Id.* § 1915(a)(1). When an individual is "unable to pay such fees," the statute provides a mechanism under which the litigant may proceed without prepaying the fees, referred to as proceeding *in forma pauperis* or proceeding IFP. *Id.* More specifically, the statute empowers a district court to "authorize the commencement" of a civil action "without prepayment of fees" when the litigant meets certain conditions. *Id.* Thus, every litigant who proceeds *in forma pauperis* remains liable for the fee "and must pay when they are able." *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997) (Easterbrook, J.). "[A]ll § 1915(a) does for any litigant is excuse the *pre*-payment of fees." *Id.*; *accord United States v. Claycomb*, 668 F. App'x 850, 852 (10th Cir. 2016) (unsigned order) (joined by Gorsuch, J.).

As the statute's limitations and discretionary language demonstrate, proceeding *in forma pauperis* in a civil action is a statutory privilege; it is not a right. *See Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987); *Allen v. Briggs*, 331 F. App'x 603, 604 (10th Cir. 2009) (Gorsuch, J.). Congress may therefore prescribe the conditions under which that privilege is available, if at all. *Cf. Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002) (Easterbrook, J.) (explaining that a statute from the First Congress required

"filing fees by all plaintiffs," and that Congress made no provision "for any federal litigant to proceed *in forma pauperis*" until 1892).

Thirty years ago, Congress circumscribed prisoners' ability to proceed *in forma pauperis*. Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104–134, 110 Stat. 1321 (1996), Congress required prisoner-litigants seeking to proceed IFP to submit to the court a certified copy of their trust fund account statement from their institution to verify their account funds, 28 U.S.C. § 1915(a)(2), and generally pay an initial partial filing fee, *id.* § 1915(b)(1). More consequentially, the PLRA also introduced a three-strikes provision. *Id.* § 1915(g). Under this provision, prisoner-litigants lose the ability to sue without prepaying the filing fee after accumulating three qualifying dismissals. *Id.*; *see Gonzalez v. United States*, 23 F.4th 788, 789 (8th Cir. 2022). Specifically, the three-strikes provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

But what must have occurred "prior" to what? Section 1915(g) requires that the prisoner have "on 3 or more prior occasions" brought actions or appeals that were dismissed on qualifying grounds. It does not expressly say when those dismissals must have occurred relative to the instant action. Nor does the statutory text expressly identify the relevant temporal point for assessing a prisoner's three-strikes status. Is that point the

submission of a complaint to the district court, the filing of a motion to proceed *in forma pauperis*, or the district court's adjudication of the IFP motion? After construing the statutory terms in context and in light of the statute as a whole, *see Massachusetts v. Morash*, 490 U.S. 107, 114–15 (1989), the Court concludes that the better reading of the PLRA is that qualifying dismissals count as strikes if they occur before the court adjudicates the prisoner's IFP application.

A.

Under Federal Rule of Civil Procedure 3, a litigant generally "commence[s]" a civil action "by filing a complaint with the court." The Eighth Circuit has held that filing a complaint commences an action, "[f]or purposes of the statute of limitations," even when the plaintiff seeks to proceed *in forma pauperis*. *Garrett v. Clarke*, 147 F.3d 745, 746 (8th Cir. 1998) (citing Fed. R. Civ. P. 3). But the commencement of an action for statute of limitations purposes does not resolve when an action is commenced for all purposes. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–51 (1980); *cf. Robinson v. Am.'s Best Contacts & Eyeglasses*, 876 F.2d 596, 597–98 (7th Cir. 1989) (Henley, J., sitting by designation) (holding, under applicable local rules, that a complaint was not "filed" for purposes of Rule 4's service deadline until the litigant paid the filing fee after the court denied his IFP application); *see also* Lonny Sheinkopf Hoffman, *The "Commencement" Problem: Lessons from a Statute's First Year*, 40 U.C. Davis L. Rev. 469, 507–08 (2006) (explaining the danger of applying rules developed for one procedural purpose to distinct statutory commencement questions). In particular, it does

not resolve when a prisoner becomes eligible to proceed *in forma pauperis* under the PLRA.

The PLRA requires judicial authorization to commence an action *in forma pauperis*. Section 1915 provides that a court may "authorize the commencement" of a civil action without prepayment of fees. 28 U.S.C. § 1915(a)(1); *see Murray v. Dosal*, 150 F.3d 814, 817 n.4 (8th Cir. 1998) (recognizing that § 1915(a) imposes prerequisites before a district court "can authorize the commencement of any prisoner's suit in forma pauperis"). As Judge Ambro of the United States Court of Appeals for the Third Circuit has explained, "[t]he 'authorize the commencement' language" of § 1915(a) "suggests that an IFP action is not 'brought' under the PLRA simply by filing a complaint or appeal." *Millhouse v. Heath*, 866 F.3d 152, 165 (3d Cir. 2017) (Ambro, J., dissenting in part and concurring in the judgment).[1] As one district judge put it, "[w]hile a plaintiff may *request* to proceed under § 1915 when he files a complaint, he requires permission of the Court to *bring* an action *under* § 1915." *Damron v. Harris*, 4:20-cv-0813-BYP, 2020 WL 6361877, at *3 (N.D. Ohio Oct. 28, 2020).

Section 1915(g) imposes one of the PLRA's limitations on IFP commencement for actions filed by prisoner-litigants. It provides that "[i]n no event shall a prisoner bring a civil action . . . *under this section*" if he has, "on 3 or more prior occasions," brought

[1] The *Millhouse* majority held that, for purposes of an appeal, strikes are measured when the prisoner files the notice of appeal, rather than when the court adjudicates his IFP application. 866 F.3d at 157–61. But the majority expressly distinguished § 1915(g)'s language concerning "bring[ing] a civil action" from its language concerning "appeal[ing] a judgment." *Id.* at 158–59. The Supreme Court subsequently abrogated the majority's separate holding that dismissals without prejudice for failure to state a claim do not count as strikes under § 1915(g). *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 n.3 (2020) (9-0).

actions or appeals that were dismissed on one of the qualifying grounds, subject to the imminent-danger exception. 28 U.S.C. § 1915(g) (emphasis added). Congress thus prohibited a prisoner from bringing an action "under this section"—that is, proceeding without prepayment of fees—if the prisoner has three strikes. *Id.* "[A]n IFP action cannot possibly commence" at the moment of filing the complaint because the court must first "screen the applicant's filing history for three-strikes status" and "make an 'indigency determination.'" *Millhouse*, 866 F.3d at 165 (Ambro, J., dissenting in part and concurring in the judgment) (citing *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 458 n.13 (3d Cir. 1996)).

Put another way, a judge confronted with a prisoner's IFP motion must "determine whether [the] prisoner is *trying* to 'bring a civil action' after having already done so on 'three or more prior occasions.'" *Gonzalez v. United States*, 23 F.4th 788, 790 (8th Cir. 2022) (emphasis added); *accord Smith v. Veterans Admin.*, 636 F.3d 1306, 1308 (10th Cir. 2011) (describing the prisoner-litigant as having "attempted to file a civil rights action," and noting that he "asked for permission to file his complaint without the prepayment" of the fee). "If the IFP applicant passes this initial review as § 1915 requires, the request will be granted, the court will 'authorize the commencement' of the suit or appeal, and the action or appeal then will be 'brought.'" *Millhouse*, 866 F.3d at 165–66 (Ambro, J., dissenting in part and concurring in the judgment). Therefore, for

purposes of the PLRA, "an IFP action begins when a court determines that an indigent prisoner seeking IFP-status is eligible to do so." *Id.* at 166.[2]

This interpretation is faithful to the text of the PLRA. The statute asks whether the prisoner has "on 3 or more prior occasions" brought actions or appeals resulting in qualifying dismissals. 28 U.S.C. § 1915(g). Although "prior" describes the occasions on which the prisoner brought earlier actions or appeals, § 1915(g) does *not* expressly require the dismissals to have occurred before the instant complaint was filed. Rather, the word "prior" must be read in the context of § 1915 as a whole, including § 1915(a)'s requirement that a court "authorize the commencement" of an action without prepayment of fees. A prisoner who submits a complaint and IFP application has requested permission to proceed under § 1915, but the court has not yet granted that permission. Under this reading, the relevant point for determining whether the prisoner has three "prior" strikes is when the court decides whether to authorize him to bring the action "under this section," not when he submits his complaint. *Id.* § 1915(g). Thus, if a prisoner accrues three qualifying strikes before the court adjudicates his IFP application, § 1915(g) prohibits the court from authorizing him to proceed without prepayment,

[2] The Eighth Circuit's long-standing discussions of filing fees reflect this distinction. It has explained that, under the PLRA, every prisoner incurs the obligation to pay the full filing fee the moment he files an action. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997); *cf.* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). But whether the prisoner must prepay "the entire filing fee" or pay it "in installments over a period of time" under § 1915 is a separate determination made later. *See Ashley v. Dilworth*, 147 F.3d 715, 716–17 (8th Cir. 1998) (per curiam). Thus, although filing a complaint immediately establishes a prisoner's obligation to pay the filing fee, it does not itself establish his eligibility to proceed without prepayment. That determination remains for the court to make later. *See Garrett*, 147 F.3d at 746 (noting the PLRA "does not say that a prison account statement must be supplied when the complaint is filed").

absent the single statutory exception. *Damron*, 2020 WL 6361877, at *3 (explaining that § 1915(g) "prevents the Court from *affording the status*, rather than preventing a prisoner from making any particular filing").[3]

Section 1915(a)(2) further supports this distinction. That subsection describes a prisoner "seeking to bring a civil action . . . without prepayment of fees" while separately referring to "the filing of the complaint." 28 U.S.C. § 1915(a)(2). In the PLRA, Congress thus distinguished between filing a complaint and seeking to bring an action without prepayment of fees. What is more, in § 1915(a)(2), Congress expressly made "the filing of the complaint" the temporal reference point for the financial documentation that § 1915(a)(2) requires. Yet Congress did *not* do so for the three-strikes restriction in § 1915(g). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Read together, these subsections support the conclusion that filing a complaint does not itself freeze a prisoner's entitlement to bring an action under § 1915 without prepayment of fees. *See Damron*, 2020 WL 6361877, at *3 (concluding a court should "consider all strikes earned, even those earned after the filing of the [c]omplaint").

---

[3] This reading does not read out the word "prior" from the statute. Rather, it gives that word effect by distinguishing strikes accrued before IFP authorization from those accrued afterward. As *Damron* explained, "[s]trikes are not retroactive." 2020 WL 6361877, at *3. Once a court grants a prisoner permission to proceed *in forma pauperis*, subsequently acquired strikes do not revoke that status. *Id.*

B.

1.

To be sure, the Eighth Circuit has stated that § 1915(g) "does not apply unless the inmate litigant has three strikes at the time he files his lawsuit or appeal." *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 952 (8th Cir. 2006) (per curiam). But *Campbell* did not address whether a court may consider strikes accrued after a prisoner files his complaint but before the court adjudicates his IFP application. Rather, the question there was whether three earlier dismissals counted as strikes while the prisoner's appellate rights remained unexhausted. *Id.* In a short per curiam opinion, the Eighth Circuit concluded that they did not. *Id.* "Though written categorically, the statement [regarding the time a lawsuit is filed] was not essential to [the Eighth Circuit's] ultimate decision" in *Campbell*. *See Mick v. Gibbons*, 171 F.4th 1097, 1104 (8th Cir. 2026). In other words, it "was not determinative" in *Campbell*. *See United States v. Gill*, 513 F.3d 836, 850 (8th Cir. 2008). The statement is therefore nonbinding dicta. *See Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020). *Campbell* neither confronted the issue presented here nor examined the significance of § 1915(a)(1)'s judicial-authorization requirement or § 1915(g)'s prohibition on bringing an action "under this section."

Dicta of superior courts are entitled to consideration, but the worth of dicta certainly varies. For example, the Supreme Court's carefully considered statements made in dicta should be given "deference and respect." *See In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) (en banc). But even they are not binding. *See id.*; *see also Kanter v. Barr*, 919 F.3d 437, 453–54 (7th Cir. 2019) (Barrett,

J., dissenting) (declining to treat passing statements in a Supreme Court opinion as resolving a question the Court had not examined). If carefully considered dicta from the Supreme Court are not binding, unexamined observations by a panel of an intermediate appellate court surely are not. *See United States v. Johnson*, 256 F.3d 895, 914–15 (9th Cir. 2001) (en banc) (Kozinski, J.) (distinguishing statements made after "reasoned consideration" from those made "casually and without analysis" or "in passing without due consideration of the alternatives"); *In re Quanta Res. Corp.*, 739 F.2d 912, 919–20 (3d Cir. 1984) (describing a "terse statement" made "in dictum and without analysis" as being "of little help"); *see also* Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1261–63 (2006) (explaining reasons that statements made in dicta are less reliable).

Moreover, the Supreme Court subsequently abrogated *Campbell*'s ultimate conclusion. *Coleman v. Tollefson*, 575 U.S. 532 (2015) (9-0). *Coleman* held that a qualifying dismissal counts as a strike even while an appeal remains pending. *Id.* at 534. As such, even if *Campbell*'s brief reference to the issue here were not dicta, it is not at all clear that this Court still is bound by it. *See United States v. Donath*, 107 F.4th 830, 836 (8th Cir. 2024) ("A limited exception to the prior panel rule permits us to revisit an opinion of a prior panel if an intervening Supreme Court decision is inconsistent with the prior opinion." (quoting *McCullough v. AEGON USA, Inc.*, 585 F.3d 1082, 1085 (8th Cir. 2009))); *Walls v. Sanders*, 144 F.4th 995, 1005 n.2 (8th Cir. 2025) (noting district court "was not bound to apply [an Eighth Circuit case] once it had been 'cast into doubt by a decision of the Supreme Court'" (quoting *United States v. Steward*, 598 F.3d 960, 962

(8th Cir. 2010))). *Campbell*'s passing dicta about the time of filing made in a case abrogated by the Supreme Court should not be extended to resolve a distinct question of statutory interpretation that the Eighth Circuit did not consider.

2.

The United States Court of Appeals for the Fourth Circuit recently reached a conclusion consistent with *Campbell*'s dicta. *Burrell v. Shirley*, 142 F.4th 239, 251 (4th Cir. 2025). There, the district court denied a prisoner's IFP application after counting a strike that accrued six days after the complaint was filed but before the court adjudicated the prisoner's application. *Id.*; *Burrell v. Shirley*, 1:22-cv-0716-TSE, 2023 WL 5228958, at *1 (E.D. Va. July 20, 2023) ("Upon review of the Court's docket, Burrell has filed at least three prior civil actions that were dismissed as malicious, frivolous, or for failure to state a claim."). On appeal, a panel of the Fourth Circuit expressly acknowledged that the prisoner had forfeited any argument concerning the timing of the strike. *Burrell*, 142 F.4th at 251 n.9. Nevertheless, the panel reached out to decide the issue and concluded, with virtually no elaboration, that it "was not a 'prior' dismissal" on the date the prisoner "filed this action." *Id.* at 251.[4]

In reaching its conclusion, the panel relied on the Fourth Circuit's earlier statement in *Taylor v. Grubbs*, 930 F.3d 611, 617 (4th Cir. 2019), which concerned whether a dismissal could count as a strike on appeal from that very dismissal, *not*

[4] Proceeding "without briefing and argument" on issues "'entails the risk of an improvident or ill-advised opinion on the legal issues tendered.'" *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO v. Trane U.S. Inc.*, 946 F.3d 1031, 1038 (8th Cir. 2020) (Colloton, J., concurring in the judgment in part and dissenting in part) (quoting *McBride v. Merrell Dow & Pharm., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986)).

whether a court may consider strikes accrued while an IFP application remains pending. Neither *Taylor* nor *Burrell* examined the significance of § 1915(a)(1)'s judicial-authorization requirement or § 1915(g)'s restriction on bringing an action "under this section." Accordingly, *Burrell* offers little persuasive analysis of the statutory question presented here.

3.

The Third Circuit's decision in *Brown v. Sage*, 941 F.3d 655 (3d Cir. 2019) (en banc), likewise does not persuade the Court to reach a different conclusion. In *Brown*, the court held that a prisoner "brought an action" within the meaning of § 1915(g) when he submitted his complaint, even though the district court dismissed the action without first ruling on the plaintiff's IFP status. *Id.* at 657. But, as discussed, § 1915(g) uses the word "bring" in two distinct contexts. It prohibits a prisoner with three strikes from bringing an action "under this section," while counting earlier actions that the prisoner "brought . . . in a court of the United States" and that were dismissed on qualifying grounds. 28 U.S.C. § 1915(g). Only the subsection's first use of "bring" is qualified by "under this section." Thus, a prisoner may have "brought" an action by submitting his complaint, making its subsequent dismissal count as a strike, without having obtained judicial authorization to bring an action *under* § 1915.

Indeed, this interpretation avoids the very consequence that so concerned the Third Circuit in *Brown*: permitting prisoners to file successive frivolous complaints without accumulating strikes whenever courts dismissed those complaints before adjudicating the prisoners' IFP applications. *Brown*, 941 F.3d at 661–62. Under the interpretation

advanced here, those dismissals count as strikes, and once a prisoner accumulates three, § 1915(g) prevents the court from granting any still-pending IFP applications, absent the sole statutory exception. Although *Brown* included the dictum that strikes are measured at filing, *id.* at 658–59 n.3, *Brown* did not independently decide the distinct question presented here or consider the consequences of reading the PLRA in a way that allows numerous pending IFP applications to escape the three-strikes restriction notwithstanding intervening qualifying dismissals.

C.

The foregoing textual analysis persuades this Court that Judge Ambro was correct to conclude that the PLRA's text makes it "clear that an *in forma pauperis* action begins under 28 U.S.C. § 1915 when a court grants the IFP request and not when the [action] is filed." *Millhouse*, 866 F.3d at 164 (Ambro, J., dissenting in part and concurring in the judgment). When there is clear language, a court must "apply the statute according to its terms." *See Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). But, at worst, this Court's interpretation of the PLRA—that interpretation shared by Judge Ambro and by the *Damron* court—is one of two textually permissible interpretations. In such cases, courts may look to a statute's purpose. *See, e.g.*, *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 192 (1995) ("While the meaning of the text is by no means clear, this is in our view the only reading that comports with the statutory purpose[.]").

It is true, of course, that federal courts "do not sit to rewrite laws so that they may address more precisely the particular problems Congress had in mind." *Block v. Meese*, 793 F.2d 1303, 1310 (D.C. Cir. 1986) (Scalia, J.). For this reason, a statute's purpose

"cannot be used to contradict text or to supplement it." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 2, at 57 (2012). But when there are multiple "textually permissible meanings," purpose can "shed light" on deciding among those permissible meanings. *Id.* (citation modified); *see also* John F. Manning, *What Divides Textualists from Purposivists?*, 106 Colum. L. Rev. 70, 84 (2006). This Court's interpretation furthers the PLRA's purpose while the other interpretation tends to obstruct it. *See* Scalia & Garner, *supra*, § 4, at 63 ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored.").

It is manifest that Congress enacted the PLRA's "three-strikes rule" in order "[t]o help staunch a 'flood of nonmeritorious' prisoner litigation." *See Lomax*, 140 S. Ct. at 1723 (quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007) (9-0)). This Court's interpretation better serves that purpose. In *Coleman v. Tollefson*, the Supreme Court rejected an interpretation of § 1915(g) that would have allowed prisoners to file numerous additional lawsuits while appeals of their qualifying dismissals remained pending. *Coleman*, 575 U.S. at 538. The Court explained that the three-strikes provision was "designed to filter out the bad claims and facilitate consideration of the good." *Id.* at 539 (quoting *Jones*, 549 U.S. at 204). The Court also specifically noted that "the statute's purpose favors our interpretation." *Id.* at 539.

A filing-date rule presents a similar problem. Consider a prisoner with two strikes who submits ten complaints with IFP applications on the same day or over the course of

just a few days.[5] Even if the court promptly dismisses one of those complaints on qualifying grounds, bringing the prisoner to three strikes, a filing-date rule would permit the prisoner to obtain IFP status in all of the remaining actions because the prisoner had not accumulated three strikes when the complaints were submitted. Thus, even after the prisoner has accumulated three qualifying dismissals, the court must continue adjudicating the pending IFP applications without regard to the three-strikes restriction.

Under the better reading, once the prisoner accumulates three strikes, § 1915(g) prohibits the court from granting any still-pending IFP applications, absent the statutory exception. This interpretation gives effect to Congress's restriction on serial filers while leaving prisoners who have not accumulated three qualifying dismissals free to seek IFP status. It also avoids allowing a prisoner to secure IFP eligibility for numerous pending actions merely by submitting them before a third strike accrues. *See Damron*, 2020 WL 6361877, at *3 (agreeing that a frivolous filer should not be incentivized "to file as many cases as he can all at one time after he has earned two strikes, in the hopes that some cases can persist even after one (or more) have been dismissed"). Under this Court's

[5] Judicial experience has shown that versions of this scenario are not at all uncommon. It is true that district courts must promptly review most complaints filed by prisoners. *See* 28 U.S.C. § 1915A(a) (requiring screening of prisoner complaints brought against a governmental entity, officer, or employee). "But prompt judicial action does not mean unjudicial haste." *See New York Times Co. v. United States*, 403 U.S. 713, 749 (1971) (Burger, C.J., dissenting). The sheer volume of complaints that some prisoners submit burdens the courts, and the more complaints they submit, the more judicial resources their review consumes, leading to a slower screening process. Under a complaint-filing-date interpretation of § 1915(g), that delay perversely benefits the very prisoners responsible for it. The longer it takes courts to dismiss meritless complaints and impose strikes, the more additional complaints those prisoners can submit before accumulating three strikes. And because the complaint-filing-date interpretation fixes IFP eligibility when each complaint is submitted, those additional complaints would remain eligible for IFP status even after the prisoner accumulates three (or more) strikes.

interpretation, a court could deny the prisoner's pending IFP applications because he has three strikes and dismiss the actions if he declines to prepay the filing fees. Reading the statute otherwise not only overlooks that the nine remaining actions in this hypothetical had not "commence[d]" "under" § 1915, but also seriously limits the three-strikes provision's ability to staunch the flood of nonmeritorious prisoner litigation.

There is "language within the text" of the PLRA to further the clear purpose all agree Congress had. *See Block*, 793 F.2d at 1310. This interpretation "hews more closely to [the PLRA's] meaning and objective than does [the] alternative." *Coleman*, 575 U.S. at 540.

**II.**

Even under some other courts' reading of the PLRA, Plaintiff Lemicy still would not be able to proceed without prepaying the filing fee in this action. Plaintiff mailed his Complaint to the Court without prepaying the fee and without applying to proceed without prepayment of fees. That is, he submitted only his Complaint, which the Court received on June 9, 2026. Plaintiff then earned his third strike a few weeks later on July 1.[6] At that time, he still had not paid the filing fee or sought leave to proceed *in forma pauperis*. It was only three weeks later, on July 23, that the Court received his request for *in forma pauperis* status.

It is an especially strained reading of the PLRA that would not count Plaintiff's July 1 strike as a prior occasion. *Cf. Brown*, 941 F.3d at 658–59 n.3 (noting that "a case

[6] *Lemicy v. Hefele*, 4:25-cv-0332-MTS, ECF No. 16 (E.D. Mo. July 01, 2026). *See also Lemicy v. Martin*, 4:15-cv-1383-CAS, ECF No. 6 (E.D. Mo. Dec. 4, 2015); *Lemicy v. Mayer*, 4:15-cv-1413-SNLJ, ECF No. 6 (E.D. Mo. Dec. 3, 2015).

counts as a strike if it was dismissed as of the date on which the plaintiff *submits his application for leave to proceed IFP* and his complaint" (emphasis added)); *Gibbs v. Ryan*, 160 F.3d 160, 162 (3d Cir. 1998) (finding an "action was 'brought' when [the plaintiff's] motion to proceed *in forma pauperis* was granted"). Indeed, technically speaking, the Clerk of Court could have refused to docket Plaintiff's Complaint when it arrived on June 9 because Plaintiff neither paid the congressionally mandated filing fee nor sought leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 1914(a); E.D. Mo. L.R. 2.01(B)(1). Plaintiff Lemicy simply did not "bring a civil action . . . *under*" § 1915 until July 23 at the earliest, and on July 23, he had three strikes. *See* 28 U.S.C. § 1915(g) (emphasis added).

**III.**

Under the PLRA, a prisoner does not obtain the statutory privilege of proceeding without prepayment of fees merely by presenting a complaint to a district court clerk. Rather, the statute makes clear that a prisoner-litigant must obtain the court's authorization before he can commence an action *in forma pauperis*. This commencement distinction matters because § 1915(g) does not simply prohibit a prisoner with three strikes from filing a complaint. It prohibits a prisoner from bringing a civil action "under" § 1915, and § 1915 tells district courts when they may "authorize the commencement" of an action without prepayment of fees. Read in the context of the PLRA as a whole, § 1915(g)'s language operates as a limitation on the privilege that § 1915(a) permits a court to grant. The relevant inquiry is therefore whether, when the court considers the prisoner's request for that privilege, the prisoner "has, on 3 or more

prior occasions," brought actions or appeals that have been dismissed on qualifying grounds. *See id.* § 1915(g). That those prior actions were dismissed for qualifying reasons *after* the prisoner submitted the instant complaint does not prevent their dismissals from counting as strikes.

Because Plaintiff here has three strikes and has not shown he is under imminent danger of serious physical injury, he may not proceed *in forma pauperis*. His accumulation of three strikes "d[id] not close the courthouse doors to" him. *See Ashley*, 147 F.3d at 717. Rather, it merely made him "pay the full ordinary filing fees sooner rather than later." *Id.* Because Plaintiff did not pay the filing fee as ordered, *see* Doc. [2], the Court will enter herewith an order dismissing this action without prejudice.

Dated this 22nd day of October 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE